✓ FILED ___ ENTERED
___ LOGGED ____ RECEIVED

**Oct 12, 2021**

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___MD___ Deputy

(Tw) AKA/EBP/JCE: USAO 2021R00350

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CASE NO.** _21-mj-2668-CBD_ |
| | * | |
| **LARRY CLINTON PROCTOR,** | * | **FILED UNDER SEAL** |
| | * | |
| **Defendant** | * | |
| | * | |
| | ****** | |

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, Joshua M. Miller, Special Agent ("SA"), Federal Bureau of Investigation ("FBI"), Washington Field Office ("WFO"), being duly sworn, state the following:

### Introduction

1.      I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations and to make arrests for offenses enumerated in 18 U.S.C. § 2516.

2.      I am a SA with the FBI and I am presently assigned to the WFO. I have been working with the FBI for approximately five years.

3.      I have set forth below only those facts that I believe are necessary to establish probable cause for the requested criminal complaint and arrest warrant. I have not, however, excluded any information known to me that would defeat a determination of probable cause. The information contained in this affidavit is based upon my personal knowledge, my review of documents and other evidence, and my conversations with law enforcement officers and other individuals. Based on the below, I respectfully submit that there is probable cause to believe that on or about June 1, 2021, **LARRY CLINTON PROCTOR, a/k/a "B," ("PROCTOR")**

1

distributed a controlled dangerous substance, specifically cocaine or cocaine base, in violation of

21 U.S.C. § 841(a)(1), in the District of Maryland.

## Summary of Probable Cause

4.      FBI and the Montgomery County Department of Police ("MCPD") started a joint

narcotics investigation of **PROCTOR** in May 2021.   The investigation began after law

enforcement received information from an FBI Confidential Human Source ("CHS") that

**PROCTOR** was distributing cocaine and cocaine base in the District Heights area of Maryland.

The CHS knew **PROCTOR** was a drug dealer from the CHS's previous interactions with other

drug dealers who knew **PROCTOR**.  Between May 2021 and June 2021, a CHS[1] – at the direction

of the FBI – conducted four controlled purchases of approximately 193.88 grams of suspected

cocaine base[2] from **PROCTOR**.  The controlled purchases were recorded and surveilled by law

enforcement.

### May 13, 2021 Controlled Purchase

5.      On May 13, 2021, at the direction of law enforcement, a CHS conducted a purchase

of approximately 28 grams of suspected cocaine base from **PROCTOR**.   Surveillance agents

were posted at **PROCTOR**'s known residence in District Heights during the operation.   At

approximately 5:00 p.m. a black male, subsequently identified as **PROCTOR**, arrived at

---

[1]  The CHS involved in the controlled purchases pleaded guilty to a federal narcotics offense
pursuant to a cooperation agreement.  To your affiant's knowledge, the CHS has provided reliable
information to law enforcement in the past, and when possible, the information provided to law
enforcement by the CHS has been corroborated.  To your affiant's knowledge, the CHS does not
have any prior convictions for crimes of dishonesty and has not previously provided false
information to law enforcement.

[2]  The Montgomery County Crime Lab results do not distinguish between cocaine and cocaine
base.  The lab only tested for the presence of cocaine; therefore, it is possible the substances
recovered from the controlled purchases were either cocaine or cocaine base. The lab is re-running
the tests to distinguish between cocaine and cocaine base.

**PROCTOR**'s residence driving a gold Mercedes sedan.  The face and head of the unknown individual (again, later identified as **PROCTOR**) were covered by a facemask and hood.

6.     About two minutes later, the same individual emerged from **PROCTOR**'s residence without the facemask and hood.  The individual was identified by law enforcement as **PROCTOR** from a photograph of **PROCTOR**'s driver's license obtained during the investigation.  **PROCTOR** accessed the same gold Mercedes, removed from the trunk what appeared to be a plastic shopping bag with a weighted object inside of it, and then re-entered the residence.  At approximately 5:15 p.m. the CHS called **PROCTOR** on a certain phone number previously provided to the CHS by **PROCTOR**.  Law enforcement watched the CHS call **PROCTOR** and later confirmed the phone number through toll records.

7.     On the recorded call, **PROCTOR** told the CHS that **PROCTOR** still needed to cook the cocaine into cocaine base, but would soon arrive at a pre-arranged purchase location.

8.     The CHS and CHS's vehicle were searched by law enforcement before and after the operation and were free of contraband.  The CHS was provided recording devices and $1,400 of official government funds ("OGF") before making the controlled purchase.  The CHS was under continuous law enforcement surveillance to and from the buy location.

9.     At approximately 6:32 p.m. **PROCTOR** was observed by law enforcement exiting his residence.  **PROCTOR** entered a green Chevrolet Tahoe registered to **PROCTOR** and then met the CHS at the pre-arranged location.  Law enforcement observed the CHS enter **PROCTOR**'s green Tahoe at approximately 6:41 p.m.

10.    The CHS emerged from the Chevrolet Tahoe a few minutes later and then met with agents at a pre-arranged location.  Approximately 28 grams of suspected cocaine base were recovered from the CHS.  The CHS confirmed the narcotics were purchased from **PROCTOR** for

$1,400 of OGF. The narcotics field-tested positive for cocaine and were submitted to the Montgomery County Crime Laboratory for further analysis. The laboratory results indicated the substance weighed 26.86 grams and tested positive for the presence of cocaine.

### June 1, 2021 Controlled Purchase

11.     On June 1, 2021 the CHS conducted a second controlled purchase from **PROCTOR**. The law enforcement officers surveilling **PROCTOR**'s residence observed **PROCTOR** arrive at home in a gold Mercedes at approximately 5:08 p.m. At approximately 5:11 p.m., the CHS placed a recorded call to **PROCTOR** and ordered two ounces of cocaine base. **PROCTOR** confirmed the amount of requested narcotics and the purchase location, and stated that **PROCTOR** would be ready at 6:30 p.m.

12.     At approximately 6:26 p.m., the CHS placed another call to **PROCTOR**, which call your affiant observed. **PROCTOR** did not answer but called the CHS back several minutes later, on a call also observed by your affiant. **PROCTOR** told the CHS that **PROCTOR** would leave his home in 15 minutes. Law enforcement observed **PROCTOR** leaving **PROCTOR**'s home in his green Chevrolet Tahoe at approximately 6:56 p.m., the approximate time that **PROCTOR** told the CHS that **PROCTOR** would leave his home. **PROCTOR** was under continuous law enforcement surveillance to another pre-arranged buy location. **PROCTOR** did not make any stops prior to arriving at the buy location.

13.     The CHS and CHS's vehicle were searched by law enforcement before and after the operation and were free of contraband. The CHS was provided recording devices and $2,800 of OGF before making the controlled purchase. The CHS was under continuous law enforcement surveillance to and from the buy location.

14.     At approximately 7:08 p.m., law enforcement observed **PROCTOR** arriving at the buy location. The CHS entered **PROCTOR**'s vehicle, then exited approximately two minutes later. The CHS then departed the area to meet with law enforcement at a pre-arranged location.

15.     Approximately 56 grams of suspected cocaine base were recovered from the CHS. The CHS confirmed the narcotics were purchased from **PROCTOR** for the $2,800 of OGF. The narcotics field-tested positive for cocaine and was submitted to the Montgomery County Crime Laboratory for further analysis. The laboratory results indicated the substance weighed 55.77 grams and tested positive for the presence of cocaine.

### June 17, 2021 Controlled Purchase

16.     On June 17, 2021, at the direction of law enforcement, the CHS conducted a third controlled purchase from **PROCTOR**. At approximately 5:00 p.m., the CHS received a call from **PROCTOR**. **PROCTOR** confirmed that the narcotics were ready and the time he would be able to meet at the buy location in Maryland.

17.     The CHS and CHS's vehicle were searched by law enforcement before and after the operation and were free of contraband. The CHS was provided recording devices and $2,800 of OGF. The CHS was under continuous law enforcement surveillance to and from the buy location.

18.     At approximately 5:35 p.m., law enforcement observed **PROCTOR** departing **PROCTOR**'s home, entering his green Chevrolet Tahoe, and then driving to the buy location. **PROCTOR** was under continuous surveillance by law enforcement from his home to the buy location. At approximately 5:45 p.m., the CHS entered **PROCTOR**'s vehicle, then exited approximately two minutes later and departed the area to meet with law enforcement at a pre-arranged location.

19.     Approximately 56 grams of suspected cocaine base were recovered from the CHS. The CHS confirmed the narcotics were purchased from **PROCTOR** for the $2,800 of OGF.  The narcotics field-tested positive for cocaine and were submitted to the Montgomery County Crime Laboratory for further analysis.  The laboratory results indicated the substance weighed 55.40 grams and tested positive for the presence of cocaine.

### June 24, 2021 Controlled Purchase

20.     On June 24, 2021, at the direction of law enforcement, the CHS conducted a fourth controlled purchase of narcotics with **PROCTOR**.

21.     The CHS and CHS's vehicle were searched by law enforcement before and after the operation and were free of contraband.  Law enforcement provided the CHS with recording devices and $2,800 of OGF.  The OGF serial numbers were scanned before and after the buy.  The CHS was under continuous law enforcement surveillance to and from the buy location in Maryland.

22.     Law enforcement observed **PROCTOR** arriving at **PROCTOR**'s home at approximately 7:05 p.m.  **PROCTOR** exited his home about three minutes later, entered his green Tahoe, and departed the area.  Law enforcement officers observed **PROCTOR** arrive at the buy location at approximately 7:59 p.m.  The CHS entered **PROCTOR**'s vehicle at the pre-arranged purchase location at approximately 8:00 p.m. and then exited about three minutes later.

23.     At approximately 8:05 p.m., law enforcement stopped **PROCTOR**'s vehicle and arrested **PROCTOR** for distribution of controlled substances.  Law enforcement recovered $2,800 from the vehicle.  The serial numbers of the funds recovered from **PROCTOR**'s vehicle matched the serial numbers of the pre-recorded OGF.

24.     At approximately 8:10 p.m., the CHS departed the buy location and met with law enforcement at a pre-arranged location.  Approximately 56 grams of suspected cocaine base were recovered from the CHS, who confirmed the narcotics were purchased from **PROCTOR** for the $2,800 of OGF.  The narcotics field-tested positive for cocaine and were submitted to the Montgomery County Crime Laboratory for further analysis.  The laboratory results indicated the substance weighed 55.85 grams and tested positive for the presence of cocaine.

**Search Warrants**

25.     At approximately 8:45 p.m. on June 24, 2021, Prince George's County Police Department ("PGPD") officers executed a search warrant at **PROCTOR**'s home in District Heights, Maryland.  Law enforcement seized approximately 25 firearms from **PROCTOR**'s home.  Six of the firearms or accessories had obliterated serial numbers.  Five of the firearms had been reported stolen.

26.     In addition to the firearms, law enforcement also recovered the following items, among others, from **PROCTOR**'s residence: over 1,500 rounds of ammunition, a digital scale containing cocaine residue, firearms holsters, multiple high-capacity magazines, a tactical scope, two firearm silencers, body armor, a firearms cleaning kit, and various firearms parts and accessories.

27.     The gold Mercedes sedan was parked in front of the home while the search warrant on the home was being executed.  A PGPD K-9 unit performed a scan of the Mercedes and provided a positive alert on the vehicle.  The vehicle was seized by PGPD and towed to a secure facility until a search warrant could be obtained.

28.     On June 30, 2021, law enforcement searched the Mercedes pursuant to a search warrant and found approximately 351.6 grams of suspected cocaine HCL and approximately 75.1

7

grams of suspected cocaine base. The narcotics field tested positive for the presence of cocaine. The narcotics were subsequently submitted to Prince George's County narcotics laboratory for testing. The laboratory results indicated the substances were in fact cocaine HCL and cocaine base. Based on your affiant's training, knowledge and experience, this amount of cocaine and cocaine base is indicative of drug distribution, and not personal drug use.

### Conclusion

29.     Based on the aforementioned facts, I submit there is probable cause to believe that on or about June 1, 2021, **PROCTOR** distributed a controlled dangerous substance, specifically cocaine or cocaine base, in violation of 21 U.S.C. § 841(a)(1).

SPECIAL AGENT JOSHUA MILLER
FEDERAL BUREAU OF INVESTIGATION


Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed. R. Crim. P. 4.1 and 4(d) this __12th__ day of October, 2021.

THE HONORABLE CHARLES B. DAY
UNITED STATES MAGISTRATE JUDGE

8